UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JASON MAYS | CIVIL ACTION |
| | |
| | NO: 16-13139 |
| VERSUS | C/W: 16-13318, 16-13952, |
| | 16-13951, 17-668 |
| | RE: all |
| | |
| C-DIVE LLC ET AL. | SECTION "H" (5) |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment to Dismiss Additional Assured Claim Asserted by Gulf South Pipeline, LP filed by Defendant-in-Cross-Claim C-Dive, LLC, and Third-Party Defendants Catlin Insurance Company and New York Marine and General Insurance Company (Doc. 40). For the following reasons, the Motion is DENIED.

## BACKGROUND

This is a consolidated action of five cases arising from a pipeline explosion. Plaintiffs Jason Mays, Brian Beadell, Matthew Boyd, and Adam Zima ("Plaintiffs") allege that they worked for C-Dive, LLC ("C-Dive") aboard

1

its vessel, the DSV MS KERCI. According to Plaintiffs, the DSV MS KERCI was servicing a pipeline owned by Gulf South Pipeline Company, LP ("Gulf South") in the Gulf of Mexico. During work on August 26, 2015, there was a release of gas that caused an explosion and injured Plaintiffs.

The following business relationships involving the pipeline work are undisputed.[1] The pipeline in question was owned and operated by Gulf South, which is a subsidiary of Boardwalk Pipelines, LP ("Boardwalk Pipelines").[2] In January 2011, Boardwalk Pipelines entered into a Master Services Agreement ("MSA") with C-Dive.[3] According to C-Dive, the MSA was a blanket contract that did not itself authorize any specific work, but that would be followed by work orders between the parties adopting the terms of the MSA. On August 11, 2015, C-Dive and Gulf South entered into one such work order, the Scope of Work Agreement ("SWA"), whereby C-Dive was to decommission the pipeline later involved in the explosion.[4]

The SWA between C-Dive and Gulf South contains a provision incorporating the MSA. It states,

> Gulf South and Contractor hereby agree that Contractor shall perform the Project described herein pursuant to the terms and conditions contained in the following documents and any exhibits and/or parts thereto: (i) this Scope of Work and (ii) the Master Services Agreement (MSA No. 0800180B-MA) by and

---

[1] *See* Doc. 49-5.
[2] The parties do not dispute that the pipeline that released gas and the pipeline that C-Dive was servicing were owned by Gulf South. C-Dive alleges that they were not the same pipeline, and it is not clear whether the parties dispute that fact.
[3] *See* Doc. 40-2.
[4] *See* Doc. 40-3.

between Boardwalk Pipeline Partners, LP and
Contractor dated December 8, 2008 ("MSA").[5]

The MSA applies to, at least in part, both Boardwalk Pipelines and its subsidiaries, including Gulf South. The agreement is "by and between BOARDWALK PIPELINES, LP (hereinafter referred to as 'Boardwalk') and C-DIVE, LLC," and provides that "[r]eference to Boardwalk shall also include its subsidiaries and direct or indirect affiliates of Boardwalk, including but not limited to . . . Gulf South Pipeline Company, LP."[6] The MSA requires C-Dive to maintain certain insurance and further states that, "All policies, with the exception of Worker's Compensation and Professional Liability, shall be endorsed to include Boardwalk Pipelines, LP as additional insured and these policies will respond as primary to any other insurance available to Boardwalk."[7]

In separate consolidated actions, Plaintiffs bring claims for negligence, Jones Act negligence, and unseaworthiness against C-Dive and Gulf South. In the final consolidated matter, C-Dive seeks a limitation of liability pursuant to 46 U.S.C. § 30505. Gulf South makes cross-claims in each of the consolidated actions against C-Dive, alleging that C-Dive is required to defend and indemnify Gulf South under the MSA. Gulf South also makes third-party claims in each of the consolidated actions against Catlin Insurance Company ("Catlin") and New York Marine & General Insurance Company ("New York Marine") as an additional insured under policies those companies issued to C-Dive. Gulf South asserts that the MSA requires C-Dive to make Gulf South an additional insured on C-Dive's comprehensive general liability policies issued

---

[5] Doc. 40-3 at 1. The text of the SWA refers to a MSA with a different date and number than the one provided by the Moving Parties, but both Gulf South and the Moving Parties agree that the submitted versions control. *See* Doc. 49-5 at 2.
[6] Doc. 40-2 at 1.
[7] Doc. 40-2 at 3.

by Catlin and New York Marine, triggering coverage for Gulf South via automatic additional insured clauses in those policies.

C-Dive, Catlin, and New York Marine (collectively, the "Moving Parties") now move for summary judgment dismissing Gulf South's claims seeking additional insured status under C-Dive's policies. They argue that the MSA obligated C-Dive to name only Boardwalk Pipelines as an additional insured, not also its subsidiaries.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[10] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[11] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish

---

[8] Fed. R. Civ. P. 56.
[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[10] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[11] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

the existence of an element essential to that party's case."[12] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[13] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[14] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[15]

## LAW AND ANALYSIS

As a preliminary matter, the parties agree that the outcome of this issue is the same whether Louisiana law, Texas law, or maritime law applies.[16] Under Louisiana law, the interpretation of an unambiguous contract is a matter of law, and "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[17] Under maritime law, interpretation of the terms of a contract is matter of law and the contract "should be read as a whole and its words given their plain meaning unless the provision is ambiguous."[18] Under Texas law, interpretation of a contract is a legal issue.[19] Courts must

---

[12] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[13] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[14] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[15] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[16] See Docs. 49 at 11, 58 at 5.
[17] Apache Corp. v. W & T Offshore, Inc., 626 F.3d 789, 794 (5th Cir. 2010) (quoting LA. CIV. CODE art. 2046).
[18] Becker v. Tidewater, Inc., 586 F.3d 358, 369 (5th Cir. 2009).
[19] Gonzalez v. Denning, 394 F.3d 388, 392 (5th Cir. 2004) (per curium).

look to the contract as a whole, and a provision is ambiguous only if it is susceptible to two or more reasonable interpretations.[20] The Court finds that the MSA's plain meaning is susceptible to only one reasonable interpretation and therefore agrees that the outcome would be the same under Louisiana, Texas, or maritime law.

The Moving Parties argue that the MSA obligates C-Dive to make only Boardwalk Pipelines an additional insured, not its subsidiaries, because the MSA's additional insured provision refers to "Boardwalk Pipelines, LP," rather than the shorthand "Boardwalk." According to the Moving Parties, the provision of the MSA that extends the agreement to Boardwalk Pipelines' subsidiaries attaches only to the specific phrase "Boardwalk," not to all references to Boardwalk Pipelines as an entity. Because the additional insured requirement refers to "Boardwalk Pipelines, LP," they argue, Gulf South is not included. Similarly, they argue that the Certificate of Insurance included as a supplement to the MSA also requires C-Dive to name only "Boardwalk Pipelines, LP" as the certificate holder. In short, the Moving Parties assert that within the MSA, the terms "Boardwalk" and "Boardwalk Pipelines, LP" have different meanings.

This Court finds otherwise. The plain meaning of the MSA is that the terms "Boardwalk" and "Boardwalk Pipelines, LP" are interchangeable. The agreement first states that Boardwalk Pipelines, LP is "hereinafter referred to as 'Boardwalk.'"[21] Thus, when the MSA later uses the phrase "Boardwalk," it is referring to the entity Boardwalk Pipelines. The agreement goes on to state that "[r]eference to Boardwalk shall also include its subsidiaries."[22] Because

---

[20] *Id.*
[21] Doc. 40-2 at 1.
[22] Doc. 40-2 at 1.

the MSA earlier provided that the term "Boardwalk" refers to the entity Boardwalk Pipelines, that sentence means that when the MSA refers to the entity Boardwalk Pipelines it includes the subsidiaries. Therefore when the MSA and its attachments require C-Dive to name Boardwalk Pipelines, LP as an additional insured, they are referring to the entity Boardwalk Pipelines and that reference includes its subsidiaries.

The meaning of the MSA is plain on its face, but this interpretation is also buttressed by other aspects of the agreement's language. The Moving Parties argue that only the phrase "Boardwalk" includes the subsidiaries, but the provision expanding the MSA to include subsidiaries does not place the word "Boardwalk" in quotes or refer to it as a "term," either of which would make it clear that the expansion applied only when that phrase was used. Instead, the provision uses a word that has already been defined to equate with the entity Boardwalk Pipelines. Furthermore, the section of the MSA requiring C-Dive to name additional insureds also provides that the "policies will respond as primary to any other insurance available to Boardwalk" and that the coverage must be "with insurance companies acceptable to Boardwalk."[23] If "Boardwalk" and "Boardwalk Pipelines, LP" have different meanings, then the MSA requires that C-Dive make its insurance primary for subsidiaries that it is not required to name as additional insureds. That is absurd; the only reasonable interpretation is that the terms mean the same thing and the subsidiaries are also additional insureds.

Because the Court finds that the MSA and SWA obligate C-Dive to make Gulf South an additional insured, C-Dive, Catlin, and New York Marine's Motion to dismiss claims based on that obligation is DENIED.

---

[23] Doc. 40-2 at 3.

## CONCLUSION

For the foregoing reasons, C-Dive, Catlin, and New York Marine's Motion is DENIED.

New Orleans, Louisiana this 9th day of November, 2017.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**