UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JASON MAYS | CIVIL ACTION |
| | |
| | NO: 16-13139 |
| VERSUS | C/W: 16-13318, 16-13952, 16-13951, 17-668 |
| | RE: all |
| | |
| C-DIVE LLC ET AL. | SECTION "H" (5) |

## ORDER AND REASONS

Before the Court is Gulf South Pipeline Company, LP's Motion for Partial Summary Judgment on Contractual Additional Insured Status (Doc. 74). For the following reasons, the Motion is GRANTED.

## BACKGROUND

This is a consolidated action of five cases arising from a pipeline explosion. Plaintiffs Jason Mays, Brian Beadell, Matthew Boyd, and Adam Zima ("Plaintiffs") allege that they worked for C-Dive, LLC ("C-Dive") aboard its vessel, the DSV MS KERCI. According to Plaintiffs, the DSV MS KERCI was servicing a pipeline owned by Gulf South Pipeline Company, LP ("Gulf

1

South") in the Gulf of Mexico. During work on August 26, 2015, there was a release of gas that caused an explosion and injured Plaintiffs.

The following business relationships involving the pipeline work are undisputed. The pipeline in question was owned and operated by Gulf South, a subsidiary of Boardwalk Pipelines, LP ("Boardwalk Pipelines"). In January 2011, Boardwalk Pipelines entered into a Master Services Agreement ("MSA") with C-Dive. The MSA was a blanket contract that did not itself authorize any specific work but that would be followed by work orders between the parties adopting the terms of the MSA. On August 11, 2015, C-Dive and Gulf South entered into a work order, the Scope of Work Agreement ("SWA"), whereby C-Dive was to decommission the pipeline later involved in the explosion.

The SWA between C-Dive and Gulf South contains a provision incorporating the MSA. The MSA applies to, at least in part, both Boardwalk Pipelines and its subsidiaries, including Gulf South. The agreement is "by and between BOARDWALK PIPELINES, LP (hereinafter referred to as 'Boardwalk') and C-DIVE, LLC," and provides that "[r]eference to Boardwalk shall also include its subsidiaries and direct or indirect affiliates of Boardwalk, including but not limited to . . . Gulf South Pipeline Company, LP."[1] The MSA requires C-Dive to maintain certain insurance and further states that, "All policies, with the exception of Worker's Compensation and Professional Liability, shall be endorsed to include Boardwalk Pipelines, LP as additional insured and these policies will respond as primary to any other insurance available to Boardwalk."[2]

In separate consolidated actions, Plaintiffs bring claims for negligence, Jones Act negligence, and unseaworthiness against C-Dive and Gulf South. In

---

[1] Doc. 40-2 at 1.
[2] Doc. 40-2 at 3.

the final consolidated matter, C-Dive seeks a limitation of liability pursuant to 46 U.S.C. § 30505. Gulf South makes cross-claims in each of the consolidated actions against C-Dive, alleging that C-Dive is required to defend and indemnify Gulf South under the MSA. Gulf South also makes third-party claims in each of the consolidated actions against Catlin Insurance Company ("Catlin") and New York Marine & General Insurance Company ("New York Marine") as an additional insured under policies those companies issued to C-Dive. Gulf South asserts that the MSA requires C-Dive to make Gulf South an additional insured on C-Dive's comprehensive general liability policies issued by Catlin and New York Marine, triggering coverage for Gulf South via automatic additional insured clauses in those policies.

C-Dive, Catlin, and New York Marine previously moved for summary judgment seeking dismissal of Gulf South's claims for additional insured status under C-Dive's policies. This Court denied that Motion. Gulf South now moves for a partial summary judgment, holding that it is a contractual named additional insured under the policies of insurance issued by Catlin and New York Marine.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A genuine issue of fact exists only "if

---

[3] Fed. R. Civ. P. 56.

3

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[7] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[8] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[9] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[10]

---

[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[5] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[6] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[7] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[8] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[9] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[10] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

In its prior order addressing the Motion filed by C-Dive, Catlin, and New York Marine, the Court held that the language of the MSA was clear and that it unambiguously required C-Dive to name Boardwalk Pipelines, LP and its subsidiaries, including Gulf South, as additional insureds on its insurance policies.[11] In their Motion, C-Dive, Catlin, and New York Marine argued that because the MSA's additional insured provision refers to "Boardwalk Pipelines, LP," rather than the shorthand "Boardwalk," C-Dive was only obligated to add Boardwalk Pipelines, LP, and not its subsidiaries, as additional insureds. They argued that the terms "Boardwalk" and "Boardwalk Pipelines, LP" have different meanings within the MSA and that only the former encompasses Boardwalk Pipelines' subsidiaries. The Court held these terms to be interchangeable and found this interpretation to be supported by the language of other provisions of the MSA. The Court denied the Motion seeking dismissal of Gulf South's claim for additional insured status.

Gulf South now moves for a holding that it is an additional insured under the policies of insurance issued by Catlin and New York Marine. In opposition to this Motion, C-Dive, Catlin, and New York Marine (the "Opposing Parties") assert substantially the same arguments previously addressed. The reiteration of these arguments and counsel's passionate appeal at oral argument have not, however, changed this Court's opinion. Indeed, upon reviewing this issue for a second time, the Court has become further rooted in its interpretation of the MSA. By way of one example, the MSA reads in part:

> Contractor will carry or cause to be carried and maintained in force throughout the entire term of this Agreement, insurance coverage described below with insurance companies acceptable to Boardwalk. . . . All policies with the exception of Workers'

---

[11] Doc. 62.

> Compensation and Professional Liability, shall be endorsed to include Boardwalk Pipelines, LP as additional insured and these policies will respond as primary to any other insurance available to Boardwalk. . . . Contractor agrees, upon request of Boardwalk to submit the original or a certified copy of its insurance policies for inspection by Boardwalk.

It would be absurd to read this passage to mean that while Boardwalk Pipelines, LP and its subsidiaries are entitled to approve of the insurance companies selected and inspect the policies, only Boardwalk Pipelines, LP is entitled to coverage therein. When the insurance requirements of the MSA are read as a whole, it is clear that the terms "Boardwalk" and "Boardwalk Pipelines, LP" are interchangeable, and any other reading would lead to absurd results.

Having already found the MSA to be clear and unambiguous, this Court need not consider the evidence submitted by the Opposing Parties regarding the negotiation of the MSA.[12] Even considering this information, however, they do not fare any better. There is ample evidence throughout that the parties intended to include Boardwalk Pipelines, LP's subsidiaries as additional insureds.[13]

Because this Court has held that C-Dive was required to add Gulf South as an additional insured to its policies pursuant to the MSA and SWA, the Court now turns to the policies. It is undisputed that both the Catlin and the New York Marine policies contain additional insured endorsements, which

---

[12] *See* Apache Corp. v. W & T Offshore, Inc., 626 F.3d 789, 794 (5th Cir. 2010) (quoting LA. CIV. CODE art. 2046) ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); Becker v. Tidewater, Inc., 586 F.3d 358, 369 (5th Cir. 2009) (stating that under maritime law, a contract "should be read as a whole and its words given their plain meaning unless the provision is ambiguous."); Gonzalez v. Denning, 394 F.3d 388, 392 (5th Cir. 2004) (stating that under Texas law, "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous.").

[13] See Doc. 74-2.

specifically provide that they will include as additional insureds any person or organization for which C-Dive is obligated by written contract to include said party as an additional insured. Accordingly, Gulf South is entitled to coverage as an additional insured on C-Dive's policies with Catlin and New York Marine.

## CONCLUSION

For the foregoing reasons, Gulf South's Motion is GRANTED.

New Orleans, Louisiana this 13th day of March, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**