UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JASON MAYS | CIVIL ACTION |
| VERSUS | NO: 16-13139<br>C/W: 16-13318, 16-13952,<br>16-13951, 17-668<br>RE: all |
| C-DIVE LLC ET AL. | SECTION "H" (5) |

## ORDER AND REASONS

Before the Court are Cross-Motions for Partial Summary Judgment by C-Dive, LLC, Catlin Insurance Co., and New York Marine & General Insurance Co. (Doc. 81) and Gulf South Pipeline Company, LP (Doc. 76). For the following reasons, C-Dive, LLC, Catlin Insurance Co., and New York Marine & General Insurance Co.'s Motion for Partial Summary Judgment is DENIED, and Gulf South Pipeline Company, LP's Motion for Partial Summary Judgment is GRANTED.

## BACKGROUND

This is a consolidated action arising from a pipeline explosion. The remaining plaintiff, Adam Zima,[1] alleges that he worked for C-Dive, LLC ("C-Dive") aboard its vessel, the DSV MS KERCI. The DSV MS KERCI was

---

[1] Plaintiffs Jason Mays, Brian Beadell, and Matthew Boyd have settled their claims in this matter.

1

servicing a pipeline owned by Gulf South Pipeline Company, LP ("Gulf South") in the Gulf of Mexico. During work on August 26, 2015, there was a release of gas that caused an explosion and injured Plaintiff.

The following business relationships involving the pipeline work are undisputed. The pipeline in question was owned and operated by Gulf South, a subsidiary of Boardwalk Pipelines, LP ("Boardwalk Pipelines"). In January 2011, Boardwalk Pipelines entered into a Master Services Agreement ("MSA") with C-Dive. The MSA was a blanket contract that did not itself authorize any specific work but that would be followed by work orders between the parties adopting the terms of the MSA. On August 11, 2015, C-Dive and Gulf South entered into a work order, the Scope of Work Agreement ("SWA"), whereby C-Dive was to plug and abandon ("P&A") the pipeline later involved in the explosion. The SWA between C-Dive and Gulf South contains a provision incorporating the MSA.

Plaintiff bring claims for negligence, Jones Act negligence, and unseaworthiness against C-Dive and Gulf South. In a consolidated matter, C-Dive seeks a limitation of liability pursuant to 46 U.S.C. § 30505. Gulf South brings a cross-claim against C-Dive, alleging that C-Dive is required to defend and indemnify Gulf South under the MSA. Gulf South also makes a third-party claim against Catlin Insurance Company ("Catlin") and New York Marine & General Insurance Company ("New York Marine") as an additional insured under policies those companies issued to C-Dive. This Court has held that the MSA requires C-Dive to make Gulf South an additional insured on C-Dive's comprehensive general liability policies issued by Catlin and New York Marine, triggering coverage for Gulf South via automatic additional insured clauses in those policies.

C-Dive, Catlin, and New York Marine (collectively the "C-Dive Parties") now seek dismissal of Gulf South's claim for defense, indemnity, and additional insured status pursuant to the Louisiana Oilfield Anti-Indemnity Act. Gulf South seeks a partial summary judgment finding that no state law anti-indemnity act applies to prevent its claims because the MSA and the SWA (collectively, the "P&A Contract") are maritime contracts.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a

---

[2] Fed. R. Civ. P. 56.
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

3

properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[7] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

The C-Dive Parties argue that pursuant to the Outer Continental Shelf Lands Act, Louisiana law applies to govern the P&A Contract and the Louisiana Oilfield Anti-Indemnity Act therefore renders the defense, indemnity, and additional insured requirements therein void and unenforceable. Gulf South, on the other hand, argues that general maritime law applies to govern the contract, under which the indemnity and defense provisions therein are enforceable. In order to determine which law applies to this dispute, the Court must determine whether the P&A Contract is a maritime or non-maritime contract.

The Fifth Circuit has recently espoused a new test for the resolution of this issue, expressly abandoning the six-factor test previously required under *Davis & Sons, Inc. v. Gulf Oil Corp.*[10] The *Doiron* test requires the court to consider just two questions in determining whether a contract is maritime: (1)

---

[7] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[10] Davis & Sons, Inc. v Gulf Oil Corp, 919 F.2d 313, 316 (5th Cir. 1990).

4

"is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters?" and (2) "does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract?"[11] This Court will consider these questions in turn.

### A. Is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters?

The principal obligation of the P&A Contract is to plug and abandon an underwater pipeline used for the transportation of natural gas. In the only Fifth Circuit opinion to have applied the *Doiron* test so far, *In re Crescent Energy Services*, the Fifth Circuit expressly held that a contract for P&A work involves the drilling and production of oil and gas.[12] The court also expressly rejected the argument, made by the C-Dive Parties here, that it should consider the historical treatment of these sorts of contracts in answering the first prong of *Doiron*.[13] In addition, the C-Dive Parties do not dispute that this service was performed on navigable waters. Accordingly, the answer to the first question in the *Doiron* test is yes.

### B. Does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract?

The SWA expressly provided for the use of a vessel to complete the plug and abandon work at issue. It expressly provided that C-Dive shall mobilize a diver support vessel for use in the project.[14] The SWA also provided that the vessel, the MS KERCI, would be relocated at different points throughout the

---

[11] *In re* Larry Doiron, Inc., 879 F.3d 568, 576 (5th Cir.).
[12] *In re* Crescent Energy Servs., L.L.C. for Exoneration from or Limitation of Liab., No. 16-31214, 2018 WL 3420665, at *5 (5th Cir. July 13, 2018).
[13] *Id*.
[14] Doc. 81-3 at p. 8.

5

project in order to facilitate the work being done.[15] The pipeline that C-Dive was tasked with abandoning was attached to the sub-sea floor in more than 20 feet of water. The MS KERCI supplied air hoses and diver lines to the divers working on the sub-sea floor, and its radio room was used to communicate with the divers as they worked. In addition, the MS KERCI housed a crane that was used to lower equipment to the divers. This Court finds that it is clear from the record that the parties anticipated that a vessel would play a substantial role in the project. Indeed, the job could not have been completed without the aid of a vessel.

The C-Dive Parties argue that this Court should limit its consideration to whether substantial work was performed *aboard* the vessel, suggesting that the vessel's role in assisting the divers on the subsea floor should not be considered. In making this argument, the C-Dive Parties misconstrue a portion of *Doiron* indicating that the seamen status of the crew asked to perform the work could be a relevant consideration in determining the anticipated role of a vessel. This Court can see no reason for such a narrow construction of the *Doiron* test. Indeed, the Fifth Circuit has explained that even a vessel's role as a work platform can be sufficient to establish this prong of the test.[16] Accordingly, the answer to the second question of *Doiron* is also yes, and the P&A Contract is a maritime contract.

Having found that the P&A Contract is a maritime contract, general maritime law applies by its own force and state law does not apply to invalidate the indemnity, defense, and additional insured provisions.

---

[15] Doc. 81-3, ¶¶ 1, 6, and 47.
[16] *In re Crescent Energy Servs., L.L.C.*, 2018 WL 3420665, at *5.

## CONCLUSION

For the foregoing reasons, Gulf South's Motion is GRANTED, and the C-Dive Parties' Motion is DENIED.

New Orleans, Louisiana this 1st day of August, 2018.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**